**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **OLUWAFEMI M. OMOTOYE**, |
| Plaintiff, |
| v. |
| **GLOBAL TECHNICAL TALENT, INC.,** *et al.*, |
| Defendants. |

Case No. 22-cv-3862 (CRC)

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Oluwafemi Omotoye filed this *pro se* action against his former employer Global Technical Talent, Inc. ("GTT"), a staffing agency that places contractors with companies, as well as four GTT employees.  Across his various filings, Omotoye raises an array of federal and local causes of action stemming from his contract work with TD Bank and his termination from GTT in April 2022.  Defendants have moved to dismiss the case in its entirety under Federal Rule of Civil Procedure 12(b)(6).  The Court will grant the motion in the main, save for one exception related to alleged unpaid wages.

I.   **Background**

Omotoye, a resident of Washington, D.C., filed this action in December 2022 against GTT, a staffing agency, and four of its employees.  The original complaint contains three causes of action: (1) discrimination on the basis of race, color, sex, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u>; (2) unlawful retaliation for engaging in protected activity under Title VII; and (3) wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d).

The allegations supporting each claim are slim.  Omotoye maintains that, in September 2021, he "began working with [GTT] and was placed to work at TD Bank as a contractor for the position of Anti-Money Laundering Specialist II."  Compl. at 4.[1]  During that assignment, Omotoye contends he "was a top performer" but, because he is Black and Botswanan, he "was treated badly compared to . . . white and Latino employees."  Id.  Beyond this claimed discriminatory treatment, Omotoye alleges that he suffered "sexual harassment" by a TD Bank supervisor who "was inappropriate" and "overly sexual."  Id.  For example, Omotoye claims that the supervisor "sent a picture of her bedroom to the team with sexual undertones."  Id.  "The harassment[] made [him] very uncomfortable," he asserts, given his status as "the only black male on the team."  Id. at 5.  Omotoye further maintains that he was assigned "tasks that were not described in [his] position description," including training new hires.  Id.  He eventually complained "to GTT that [his] pay and training [were] unfair" and was purportedly terminated soon after "with no reason given."  Id. at 4–5.  The original complaint concluded with a demand for damages totaling $100,000.  Id. at 4.

In May 2023, Defendants moved to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state claims upon which relief can be granted.  Two days later, the Court issued an Order advising Omotoye of his obligation under the Federal Rules of Civil Procedure and the Court's Local Civil Rules to file an opposition to Defendants' motion by June 5, 2023.  Rather than submitting his opposition, however, Omotoye filed an amended complaint against GTT and TD Bank.  See Am. Compl. at 2.  Instead of alleging facts, Omotoye listed the following items in the "Statement of Claim" section of the preprinted form complaint: "(i) lack of reason for termination; (ii) termination for poor performance without any poor

---

[1]  Pincites refer to the ECF numbers.

performance reports; (iii) discipline for filing a complaint; (iv) breach of contract; (v) managers failing to follow company policy; and (vi) docking pay." Id. at 4 (cleaned up). Again, Omotoye requested $100,000 in compensatory damages. Id.

Defendants once again moved to dismiss the amended complaint under Rule 12(b)(6), arguing that these conclusory allegations "do not even feign toward a plausible claim." Mot. Dismiss at 1. This time, Omotoye filed an opposition in which he clarified that his amended complaint did not supplant his original one. He instead asserted that he "never abandoned [his] conviction that the Defendants violated the Title VII of the Civil Rights Act and the Federal Equal Pay Act" and that his "six arguments were derivatives and specifics of how it was done." Opp'n at 1. The opposition also further developed some of the allegations in the amended complaint—namely, that GTT unlawfully withheld some of his pay. Am. Compl. at 4. Specifically, Omotoye alleges that he "was never paid sick leave," purportedly in violation of D.C. Code § 32–531.02, and that his "last work week wages are still outstanding." Opp'n at 4.

## II.   Legal Standards

A motion to dismiss for failure to state a claim "tests the legal sufficiency of a claim." Sickle v. Torres Advanced Enter. Sols., LLC, 884 F.3d 338, 344 (D.C. Cir. 2018). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering such a motion, the Court must construe the complaint "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Iqbal, 556 U.S. at 678 (citing Twombly, 550

U.S. at 555).  The Court also need not accept a plaintiff's legal conclusions as true, see id., nor presume the veracity of legal conclusions that are couched as factual allegations, see Twombly, 550 U.S. at 555.

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," so long as they contain "factual matter" that allows the Court to "infer more than the mere possibility of misconduct."  Atherton v. D.C. Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (citation omitted).  Although the Court is not required to "fish" for plausible claims, it may "consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged."  Greenhill v. Spellings, 482 F.3d 569, 572–73 (D.C. Cir. 2007).  The Court also must consider a pro se litigant's "filings as a whole before dismissing a complaint," including any opposition to a motion to dismiss.  Schnitzler v. United States, 761 F.3d 33, 38 (D.C. Cir. 2014).  Accordingly, the Court will consider Omotoye's original complaint, his amended complaint, and his opposition to the motion to dismiss in assessing the viability of his claims.[2]

### III.  Analysis

#### A.  Claims Against Individual Defendants

To begin, the Court must dismiss the Title VII and Equal Pay Act claims against the four individual Defendants.  Title VII permits suits against covered "employers," a statutory term that excludes supervisors and other employees in their individual capacity.  Thomas v. Wash. Metro. Area Transit Auth., 305 F. Supp. 3d 77, 86–87 (D.D.C. 2018) (citing Gary v. Long, 59 F.3d

---

[2]  This Memorandum Opinion does not address Omotoye's claims against TD Bank, which was never served with the amended complaint in this action.  The Court will resolve the claims against TD Bank in a separate civil action.  See Omotoye v. TD Bank, No. 22-cv-3861 (CRC) (D.D.C. filed Dec. 28, 2022).

1391, 1399 (D.C. Cir. 1995). The same goes for the Equal Pay Act. "Courts in this Circuit and elsewhere have recognized that the Equal Pay Act 'overlaps' with Title VII, and the two statutes should be 'construed harmoniously with the result that the principles developed under each be applied interchangeably' with the other." Frett v. Howard Univ., 24 F. Supp. 3d 76, 85 (D.D.C. 2014) (quoting Hardy v. Bowen, No. 85-cv-2119, 1986 WL 15710, at *8 (D.D.C. Nov. 19, 1986)) (brackets omitted). This general principle extends to the Equal Pay Act's definition of "employer" and precludes plaintiffs from suing supervisors or other employees for alleged violations. See id. Both statutory claims can therefore proceed only, if at all, against GTT.

    B.  Title VII

    The Title VII claims cannot proceed against GTT, however, because also excluded from Title VII's statutory definition of "employer" are "Indian tribe[s]," 42 U.S.C. § 2000e(b), and "corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity," 43 U.S.C. § 1626(g). GTT falls within the second carveout and thus is not subject to Title VII. During the relevant time periods, the Chenega Corporation, an Alaska Native Corporation formed under the Alaska Native Claims Settlement Act, 43 U.S.C. § 1601 et seq., owned between 70% and 82.5% of GTT. See Mot. Dismiss at 4; Defs.' Response to Court's Order, Exs. 1–3.[3] These ownership shares are well

---

[3] Following the established practice within this jurisdiction and beyond, the Court takes judicial notice of the ANCSA Certificate of Eligibility and GTT's operating agreements—the veracity of which Omotoye does not contest—at the motion-to-dismiss stage. See, e.g., Daniels v. Chugach Gov't Servs., Inc., 149 F. Supp. 3d 183, 190 (D.D.C. 2016) (relying on the Alaska Native Corporation's "Biennial Reports" to dismiss Title VII claims); Herndon v. Alutiiq Educ. & Training, LLC, No. 2:16CV72, 2016 WL 9450429, at *3 (E.D. Va. May 6, 2016) ("To support its argument that it is exempt from Title VII's definition of 'employer,' Defendant submitted corporate ownership documents, as well as the Articles of Incorporation of Afognak Native Corporation. Although this information was not included in Plaintiff's Complaint or incorporated therein by reference, the Court may nevertheless consider these documents in deciding Defendant's Motion to Dismiss." (footnote omitted)).

above the 25% threshold necessary to establish the exemption from Title VII.  Omotoye's sole

objection is that "none of the decision makers appear[ed] to be Native American."  Opp'n at 2.

Putting aside the rank speculation, the claim that certain employees are not Native American is

legally irrelevant; what matters is that GTT is a subsidiary of an Alaska Native corporation.  The

Court accordingly will dismiss all Title VII claims against GTT with prejudice.  See, e.g.,

Daniels, 149 F. Supp. 3d at 190  (dismissing Title VII claims against Alaska Native corporation

because the company was "exempt from the definition of employer under Title VII")

     C.  Equal Pay Act

     Turning to the Equal Pay Act, Omotoye fails to state a claim because he does not

plausibly allege that he received lower pay because of his sex.

     The Equal Pay Act was passed "to remedy the 'ancient but outmoded belief' that a man

should be paid more than a woman for performing the same duties."  Cornish v. District of

Columbia, 67 F. Supp. 3d 345, 360 (D.D.C. 2014) (citation omitted).  To achieve this aim, the

Equal Pay Act makes it unlawful to "discriminate . . . between employees on the basis of sex by

paying wages to employees in such establishment at a rate less than the rate at which he pays

wages to employees of the opposite sex . . . for equal work on jobs the performance of which

requires equal skill, effort, and responsibility, and which are performed under similar working

conditions."  29 U.S.C. § 206(d)(1).  As this statutory mandate makes clear, the Act's scope is

limited:  "[T]he Act applies only to pay disparities stemming from sex discrimination.  Pay

disparities due to other reasons, by contrast, are not actionable."  Kangethe v. District of

Columbia, 953 F. Supp. 2d 194, 202–03 (D.D.C. 2013).  Thus, to establish a violation, a plaintiff

must allege he received unequal pay compared to an employee of another sex while performing a

job with substantially "equal skill, effort, and responsibility."  Johnson v. Wash. Metro. Area

Transit Auth., No. 19-cv-3534 (CRC), 2022 WL 4547527, at *3 (D.D.C. Sept. 29, 2022)

(quoting Goodrich v. Int'l Bhd. of Elec. Workers, 815 F.2d 1519, 1522 (D.C. Cir. 1987)).

      Omotoye has not alleged an Equal Pay Act violation here.  He never claims he was paid

less than employees of the opposite sex for equal work.  Omotoye instead maintains that he was

required to perform tasks, such as training new hires, that fell outside his job description and for

which he was not properly compensated.  See Compl. at 5.  Omotoye may believe that his

"pay . . . was unfair," id., but he fails to allege that any disparity in pay was the result of sex

discrimination.  The Court therefore will dismiss his Equal Pay Act claim.

      D.  Breach of Contract: Wrongful Discharge

      Whereas Omotoye's original complaint contained only the two federal statutory claims

discussed above, his amended complaint added several D.C. law claims into the mix.  These

additional claims include GTT's alleged breach of contract for his purported termination in April

2022, eight months before the end of his assignment.  See Am. Compl. at 4; Opp'n at 3.  In order

to assert a breach-of-contract claim for wrongful discharge, however, Omotoye must show that

the standard presumption of at-will employment does not apply.  Based on the current pleadings,

he has not carried his burden on this score.

      In the District of Columbia, "[t]here is a presumption that a hiring not accompanied by an

expression of a specific term of duration creates an employment relationship terminable at will

by either party at any time."  Perkins v. Dist. Gov't Emps. Fed. Credit Union, 653 A.2d 842, 842

(D.C. 1995) (citation omitted).  "In a relationship governed by the at-will doctrine, an employee

can be fired for any reason or no reason."  LeFande v. District of Columbia, 864 F. Supp. 2d 44,

48 (D.D.C. 2012).  "Termination of employment, then, does not breach an at-will employment

contract, because by its very terms the agreement contemplates that either party may end the

employment relationship, with or without cause." Daisley v. Riggs Bank, 372 F. Supp. 2d 61, 67 (D.D.C. 2005).

"The presumption of at-will employment is rebutted only where the parties clearly state an intention to place limits on the employer's right to terminate." Turner v. Fed. Express Corp., 539 F. Supp. 2d 404, 410 (D.D.C. 2008). "There are generally two ways a party can rebut the presumption of at-will employment in order to bring a wrongful discharge claim under a breach of contract theory." LeFande, 864 F. Supp. 2d at 48. "First, parties can provide evidence that they intended to contract for a fixed period of employment." Id. "Alternatively, they can provide evidence that the agreed-upon employment can only be terminated upon specific preconditions." Id.

Omotoye attempts to meet his burden via the first route: showing that he and GTT contracted for a fixed period of employment.[4]  He alleges that Brian Lewis, a Senior Contractor Care Specialist at GTT, messaged him on January 25, 2022 stating he had "received word that [Omotoye's] assignment ha[d] been extended to 12/31/2022." Am. Compl., Ex. C.  Per Lewis's request, Omotoye purportedly "acknowledged and confirmed" receipt of the message that same day.  Opp'n at 3.  That exchange, in Omotoye's view, created a fixed period of employment that rebuts the ordinary presumption of at-will employment.  See id.  He further contends that GTT breached that "guarantee of extended employment" by terminating him in April, "result[ing] in a personal loss of income estimated at . . . $25,000" for the eight months he did not work.  Id.

---

[4]  Omotoye also argues that his "employers never verbally stated that [he] was an at will employee and that [he] could be fired for no reason at all."  Opp'n at 5.  But, as noted above, an employer need not say anything to that effect because the baseline presumption is that, absent a contrary intent, employment in the District of Columbia is at-will.

The Court disagrees.  Taken together, Omotoye fails to put forth sufficient facts showing that an employment contract, rather than an at-will arrangement, existed between him and GTT. The message from GTT's Senior Contractor Care Specialist did not purport to create a fixed term of employment with GTT.  Rather, on the Court's reading, Lewis's message sought to inform Omotoye that his current assignment with TD Bank was being extended until the end of the year. The apt analogy is a lawyer who is told he is assigned to a client matter that is set to run through the next several months.  In no case does the specified length of the *assignment* with the client create a fixed term of *employment* with the lawyer's firm.  This understanding is reinforced by the nature of the message.  Lewis is not purporting to extend an employment offer that Omotoye could then accept; instead, he appears to have been informing Omotoye that his current assignment has been extended and asking Omotoye to confirm receipt.  Based on the current pleadings, then, the Court does not identify an objective intent on the part of GTT to be bound by any fixed term of employment.  See Georgetown Ent. Corp. v. District of Columbia, 496 A.2d 587, 590 (D.C. 1985) (holding, to be enforceable, a contract must reflect "(1) agreement as to all material terms; and (2) intention of the parties to be bound.").  Absent a specific term of duration, Omotoye's breach of contract claim falters out of the gate.

The Court will therefore grant the motion to dismiss this claim but provide Omotoye an opportunity to cure this issue in an amended complaint.  To successfully do so, Omotoye must provide additional context on the web of contracts at issue—most important of which being his original contract with GTT—and demonstrate that, viewed in context, Lewis's January 25, 2022 message is best understood as creating a fixed term of employment with GTT.  Otherwise, this claim cannot proceed.

E.  Pay Docking

Omotoye's final claim, initially alleged in his amended complaint and developed in his opposition, is that GTT unlawfully "dock[ed his] pay."  Am. Compl. at 4.  More specifically, Omotoye contends that GTT owes him additional sums for two reasons.  First, he asserts that he did not receive any paid leave during his eight-month tenure at GTT in violation of the District of Columbia's "Employee Sick Leave" law, D.C. Code § 32–531.02, which mandates that an "employer with 100 or more employees shall provide for each employee not less than one hour of paid leave for every 37 hours worked, not to exceed 7 days per calendar year."  See Opp'n at 4 (quoting D.C. Code § 32–531.02).  Second, he claims that his "last work week wages are still outstanding" and that GTT never responded to his email requesting payment.  See id.; Am. Compl., Ex. D (emails from May 2022 regarding last paycheck).

Omotoye's first contention fails to state a claim because he does not allege that he ever took leave while at GTT.  Section 32–531.02 does not require employers "to provide the cash equivalent of unused paid sick leave to employees who resign or are terminated."  Paid Sick Leave in DC Fact Sheet #knowthelaw, D.C. Dep't of Emp. Servs., https://perma.cc/9NP3-7694 (last visited Feb. 16, 2024).  Thus, to show he is entitled to payment, Omotoye must allege that he was not compensated for leave that he actually took for one of the reasons specified in § 32–531.02(b) during his tenure at GTT.  He has not done so, but the Court will afford him an opportunity to fill in the gaps in an amended complaint.

Omotoye's second assertion does plausibly state a claim, however.  While thin on details, Omotoye alleges that GTT did not pay him wages for the final week that he worked before he was terminated in April 2022.  If true, it is more than plausible that GTT breached a contractual obligation to pay Omotoye for services rendered (although Omotoye provides no details about

his contract with GTT in his current filings).  The Court therefore will deny GTT's motion to dismiss this count.

## IV.  Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. Nos. 7 and 11] Defendants' Motions to Dismiss are GRANTED in part and DENIED in part; it is further

**ORDERED** that Omotoye shall file any amended complaint addressing the identified deficiencies with his Equal Pay Act, wrongful-discharge, and sick-leave claims within 30 days of this Order.  Otherwise, the claims will be dismissed with prejudice.  Any amended complaint shall not discuss the Title VII claims, which the Court has dismissed with prejudice.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: March 12, 2024